This is an appeal from a conviction for the crime of burglary in the Circuit Court of Lauderdale County. We affirm.
The primary question raised by the defendant concerns the trial court's admission of an in court identification of defendant by the state's chief witness, Mrs. E.S. Walker. Mrs. Walker testified that on November 6, 1967, she observed a car occupied by a man and a woman turn into the driveway of Mrs. Margorie M. West's home, her neighbor. The approximate distance at that time between Mrs. Walker's vantage point and her neighbor's house was 200 yards. Mrs. Walker knew that Mrs. West was not home at that time of day and so her suspicions were aroused upon seeing the woman get out and go to the door. Then she saw the couple walk around the house twice. She testified the woman came around to the front door alone and entered when the door was opened for her. After she saw the woman go out to the car with something in her arms, Mrs. Walker got in her car and drove over for a closer look. She drove back and forth on the highway in front of Mrs. West's house and had stopped and backed into the driveway leading to the adjacent house in order to turn around to go back by when the couple came hurrying out of the house and proceeded to leave. When their car reached the end of the driveway the man turned to check for traffic. When *Page 426 
he did, Mrs. Walker was able to view his face at a distance of two car lengths. Mrs. Walker attempted to follow the couple but was forced to give up when the speed approached eighty miles an hour. She rereturned to her house and telephoned Mrs. West at work and told her what had happened. Mrs. West contacted the sheriff. When they went to look at Mrs. West's house it was apparent that the house had been broken into and there is no issue presented as to that. When Mrs. Walker gave a description of the man and the car to the deputy, Mrs. West volunteered that it matched the description of John Crawford Poole, who she said had been by her house previously looking for housepainting work. Poole was arrested later the same day at the home of relatives by the highway patrol after he had been unsuccessfully pursued earlier by the sheriff's deputies. Poole was driving a car that answered the description given the officers by Mrs. Walker. Poole testified that he had run earlier because he knew the sheriff had a warrant for his arrest on a parole violation.
On the next day Mrs. Walker was asked to come down to the jail to make an identification. Before the defendant was shown to her the deputy revealed that the detainee was John Crawford Poole whom Mrs. West had recognized from Mrs. Walker's description. The defendant was brought before Mrs. Walker alone and she stated he was the man she had seen at Mrs. West's house. The defendant had not been indicted and had not been provided with an attorney at the time of this pretrial confrontation.
When Mrs. Walker made the in court identification no mention was made of the jail house identification by her or the State. Defense counsel brought out this confrontation on cross examination. The defendant's case consisted of an alibi which was corroborated by members of his family and a neighbor. It was also brought out that there were small discrepancies in the description of the car given by Mrs. Walker. The jury found the defendant guilty and he was sentenced.
On June 12, 1967, the United States Supreme Court decided in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) that a post indictment extra judicial identification or lineup was a critical confrontation at which a defendant's Sixth Amendment right to counsel must be recognized. In a decision handed down the same day, Stovall v. Denno,388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the court held its ruling to be applicable prospectively only. Since the decision in these cases, Congress has enacted the Omnibus Crime Control and Safe Street Act of 1968 which makes eye witness testimony admissible in Federal court under all circumstances. However, assuming that Wade, supra, still applied to State prosecutions and the defendant was entitled to benefit of counsel at the point of the confrontation with the witness at the sheriff's office, the per se exclusionary rule does not apply here. Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).
A per se exclusionary rule was not applied in Wade, Stovall
or Gilbert, supra, to all in court identifications which occurred after illegal confrontations. The "independent source" doctrine formulated by Justice Holmes was recognized by Wade as being available to re-establish the validity of the offered evidence. "Of course this does not mean that the facts thus obtained [illegally] become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, * * *." Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).
The Supreme Court in Wade quotes with approval the test formulated in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) to be used in determining the application of the independent source doctrine.
 Rather, the more apt question in such a case is "whether, granting establishment *Page 427 
of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959). 371 U.S. at 488, 83 S.Ct. at 417.
This test is also translated by Wade into language applicable to the identification problem.
 [T]o establish by clear and convincing evidence that the in court identifications were based upon observations of the suspect other than the line up identification. 388 U.S. at 240, 87 S.Ct. at 1939.
The Wade decision also provides guidelines of factors to be considered in determining the successful application of the independent source doctrine test. (1) The prior opportunity to observe the alleged criminal act — in this case the observance for an extended period of the couple at two hundred yards and a view of the man at two car lengths. (2) The existence of any discrepancy between any pre-lineup description and the defendant's actual description — in this case not only was there little discrepancy but it was accurate enough for Mrs. West to recognize that it matched defendant. (3) Any identification prior to lineup of another person — none in this case. (4) Failure to identify the defendant on a prior occasion — not in this case. (5) The lapse of time between the alleged act and the line-up identification — less than 24 hours.
The Wade decision also comments that it is "relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." 388 U.S. at 241, 87 S.Ct. at 1940. The line-up in this case consisted of the defendant being shown alone to Mrs. Walker after the deputy had indicated that he was the John Poole that Mrs. West had recognized from the description given by Mrs. Walker the day before. It would seem that the way this extra-judicial identification was handled could, even overlooking its unconstitutional aspects, be attacked as having little, if any, probative value on the subject of identification. The Supreme Court in Stovall, supra, while noting the condemnation of the single man lineup procedure held that it in and of itself does not constitute a violation of due process but it must be considered in light of the totality of the surrounding circumstances. Although the deputy's remarks as to the name of the man Mrs. Walker was about to see were highly suggestive and destructive of an objective result, there was no attempt by the State to introduce evidence of the confrontation to bolster the in court identification. See also Simmons v. United States,390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
Since the State did not introduce evidence of the illegal extra-judicial identification by the witness the per se rule is not in effect as to her testimony and it is competent if an "independent source" can be shown for her in court identification. It appears from the record that such an independent source was well established and the effect of the rulings by the trial court was to so find. Furthermore, the trial court instructed the jury at the request of appellant that if it believed from the evidence that the identification of the defendant by Mrs. Walker was based upon anything whatsoever except what she saw at the scene of the alleged crime, then the jury had to disregard her identification of appellant. Under these circumstances appellant certainly was not denied due process.
We have considered the other errors assigned and find them to be without merit. For the reasons stated this case is affirmed.
Affirmed.
ETHRIDGE, C.J., and JONES, BRADY and SMITH, JJ., concur. *Page 428